UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL A. PEAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-cv-3043 (TSC) |
| | ) | |
| UNITED STATES | ) | |
| DEPARTMENT OF JUSTICE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Michael Peak, appearing *pro se*, challenges the Federal Bureau of Investigation's ("FBI") response to his request under the Freedom of Information Act ("FOIA"). The Department of Justice and the FBI have moved for summary judgment under Federal Rule of Civil Procedure 56, ECF No. 13, and Plaintiff has cross-moved for summary judgment, ECF No. 20. For the reasons explained below, Defendants' motion will be GRANTED, and Plaintiff's motion will be DENIED.

**I. BACKGROUND**

Plaintiff, a Kentucky state prisoner, was convicted by a jury of first-degree murder and sentenced to life in prison. *See* Compl., ECF No. 1 at 2 (citing *Peak v. Com.*, 197 S.W.3d 536 (Ky. 2006)). On May 15, 2018, Plaintiff requested the following from the FBI pertaining to his criminal case:

> copies of all documents, inclusive of reports, notes, comparable test results, correspondence and follow-up between inter/intra agencies generated in relation to multiple biological/DNA evidence submissions to the FBI crime lab

1

>from the Kentucky State Police (KSP) crime lab from 1999-2007 with cross referencing KSP case and lab numbers:
>Case Nos. 05-99-0183; FA-99-09; Lab Nos. 99-0-01804; 99-0-01906; 00-2-06281; 01-0-00374; and 01-0-07920.

Decl. of Michael G. Seidel ¶ 5, ECF No. 13-2, & Ex. A.[1] After Plaintiff submitted additional information, by letter of June 28, 2018, the FBI responded to Plaintiff's Request No. 1406259-000, for "FBI LAB DATA FROM KSP 1999-2007." Seidel Decl., Ex. D (subject line). The letter stated in relevant part that a search of the FBI's Central Records System ("CRS") had located no "main file records responsive to your request," that Plaintiff's file was closed, and that he could appeal to the Office of Information Policy ("OIP") within 90 days. *Id*. The FBI invited Plaintiff to submit a new FOIA request if he had "additional information pertaining to the subject of [the] request" to enable "an additional search." *Id.*

On July 5, 2018, Plaintiff resubmitted his request "under the following parameters:"

> • All records of any DNA submission by any Kentucky State Official to one or all: F.B.I. Crime Laboratory, Missing Persons DNA Database, and CODIS on Miguel Angel Garcia, the victim in my criminal case, Jefferson Circuit Court No. 0l-CR- 584, *Peak v. Commonwealth,* 197 S.W.3d 536 **(Ky. 2006).**
>
> • I am seeking post-conviction DNA relief under KRS 422.285 et seq. and I am entitled as a defendant to have this information disclosed to me inclusive of cross- referencing:
>
> • Case Nos. 05-99-0183; FA-99-09
>
> • Lab Nos. 99-0-01804; 99-0-01906; 00-2-06281; 01-0-00374; 01-0-07920

---

[1] Seidel is Assistant Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD").

> • All notes, correspondence inter/intra state and federal agencies involved in my case, comparison results, comparable DNA profiles generated in relation to multiple biological/DNA evidence submissions to the F.B.I. crime lab from the Kentucky State Police and Medical Examiner's Office between 1999-2007.

Seidel Decl., Ex. E at 1. Plaintiff added that no "privacy concerns" exist because "the victim is deceased and the collection of DNA evidence in relation to my case . . . were [sic] placed in the public domain" through the testimony of a forensic anthropologist from the Kentucky Medical Examiner's Office and detectives from the Kentucky State Police. *Id*. On July 24, 2018, the FBI, referencing new Request No. 1406259-001 and the above-mentioned subject line, informed Plaintiff that "a search of the locations or entities where records responsive to your request would reasonably be found" had located no responsive records. Seidel Decl., Ex. F. The letter again informed Plaintiff of his right to appeal the decision to OIP. *See id*.

On August 15, 2018, Plaintiff submitted to OIP an "Appeal of Non-Disclosure," Seidel Decl., Ex. G., asserting that the FBI's search was inadequate because "it failed to employ" its "Automated Case Support System," "the universal index (UNI)," and "Sentinel, the FBI's next generation case management system that became effective FBI-wide on July 1, 2012." Admin. Appeal at 2 (cleaned up). On September 23, 2018, OIP affirmed the FBI's action, concluding that it "had conducted an adequate, reasonable search for [responsive] records." Seidel Decl., Ex. I. OIP informed Plaintiff that the requested records "are likely maintained by state or local authorities," whereas "federal FOIA applies only to records maintained by federal agencies that are subject to the FOIA." *Id*. It suggested that Plaintiff direct his request "to the proper state or local authority in accordance with the appropriate state or local records access law." *Id*.

3

Finally, OIP advised Plaintiff of his right to sue. Plaintiff initiated this action on November 28, 2018, seeking "to enjoin" Defendants "from refusing to search and produce" records. Compl. ¶ 1.

**II. LEGAL STANDARD**

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (citation omitted).

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Responsibility & Ethics in Washington v. DOJ*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)). FOIA requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory language." *Id*. (internal quotation marks omitted); *see also* 5 U.S.C. § 552(a), (b). A plaintiff prevails "only if he has demonstrated that an agency has (1) improperly (2) withheld (3) agency records." *Johnson v. United States*, 239 F. Supp. 3d 38, 44 (D.D.C. 2017) (citation and internal quotation marks omitted).

In deciding whether an agency has fulfilled its obligations under FOIA, "the court shall determine the matter *de novo* . . . and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The court may rely solely on

4

information provided in an agency's supporting affidavits or declarations if they are relatively detailed and "are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA," the plaintiff "must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### III. ANALYSIS

An agency responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). "When a plaintiff questions the adequacy of the search . . ., the factual question it raises is whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). An agency will be granted summary judgment on the adequacy of its search if it "show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (*Weisberg II*)).

An agency can show "reasonableness" by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive

materials (if such records exist) were searched." *Sanders v. Oba*ma, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom., Sanders v. U.S. Dep't of Justice*, No. 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (internal citation omitted). Adequacy "is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (*Weisberg III*).

An agency need not search every record system. Rather, a search is reasonable if it includes all systems "that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Once an agency has made a prima facie showing of adequacy, the burden shifts to the plaintiff to provide countervailing evidence . . . sufficient to raise substantial doubt concerning the adequacy of the agency's search." *Rodriguez v. U.S. Dep't of Def.*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017) (internal citation omitted). Speculation that records exist is not grounds to require a further search. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996).

Defendants' declarant provides a comprehensive description of the FBI's vast Central Records System (CRS), which encompasses the Automated Case Support (ACS) system, the Sentinel case management system, and the Universal Index (UNI) that Plaintiff claims were not searched. *Compare* Seidel Decl. ¶¶ 15-23 *with* Ex. G (Admin. Appeal). The declarant adequately describes the search methodology, which indeed encompassed the foregoing systems, *see* Seidel Decl.¶¶ 25-26, and plausibly explains why and how the search terms (variations of Plaintiff's name) were utilized, *see id*. ¶ 26. In addition to the CRS, the FBI searched "its manual indices for the Louisville

Field Office using the same search terms," *id*. ¶ 27, and prompted "a targeted search" by "subject matter experts" of its Laboratory Division Case Files maintained by the Forensic Analysis Support Unit of the Science and Technology Branch, *id*. ¶¶ 28, 31. Finally, in response to this lawsuit, the FBI "conducted subsequent searches for records concerning: A. Subject, Michael A. Peak" and "B. Subject, Miguel Angel Garcia (deceased)." *Id*. ¶ 29.  The former repeated "a CRS index search" using variations of Plaintiff's name "for potentially responsive records employing the ACS indices available through Sentinel and a search of [the FBI's] manual indices for its Louisville Field Office"; the latter involved "a CRS index search for potentially responsive laboratory-related records, utilizing the deceased/victim's name, employing the ACS indices available through Sentinel." *Id*.; *see id*. ¶¶ 19-23 (describing automated and manual databases).  The declarant avers that "all systems and locations likely to contain responsive records" were searched and "there are no other systems or locations likely to contain" responsive records.  Seidel Decl. ¶ 30.

Plaintiff does not question the reasonableness of the foregoing searches but rather the completeness of the FBI's search.  Citing "the Government's NMPDD and NamUs databases," he argues that the government "has presented no evidence why these federal databases are not connected to CRS and would not provide the records responsive to Peak's FOIA requests, or that it was not required to search these databases like it did regarding CODIS."  Opp'n, ECF No. 19 at 7.  Contrary to Plaintiff's first point, Defendants' initial declaration adequately describes the Combined DNA Index System (CODIS) as "an automated DNA database system" -- wholly separate from the CRS -- that supports the National DNA Index System (NDIS)

7

and State and Local DNA Index Systems under the DNA Identification Act of 1994. Seidel Decl.¶ 33 (citing the 34 U.S.C. § 12592); *see id*. ¶¶ 34-35 (elaborating on CODIS functions). Subsequently, Defendants clarify that the National Missing Persons DNA Database or NMPDD "is one of the indices within CODIS, not a separate database, and is subject to the same use restrictions." Reply, ECF No. 23 at 2. Plaintiff does not dispute the FBI's plausible reasons for not searching CODIS and, by extension, NMPDD. *See* Opp'n at 18 ¶¶ 33-35 (admitting "the Government's statements regarding accessing CODIS"); *cf.* Seidel Decl. ¶¶ 32, 35 (noting that "the indices of CODIS are not searchable by name, identifying information, or similar information offered by Plaintiff," nor is CODIS "indexed by name, case number, contributing agency, or any personally identifying information" to enable the FBI "to identify a DNA profile responsive to Plaintiff's request"); *see accord Lockett v. Wray*, 271 F. Supp. 3d 205, 209 (D.D.C. 2017) (finding "reasonable" FBI declarant's explanation why a search of CODIS "by the laboratory number, even if possible, would yield no responsive records"); *Moore v. Nat'l DNA Index Sys*., 662 F. Supp. 2d 136, 138 n.3 (D.D.C. 2009) (observing "[t]hat the very design of the NDIS makes such a search impossible is a testament to the government's well-placed concerns for the personal privacy of any individual whose DNA records are stored in the NDIS."). And where a search for records "is, by design, literally impossible for the defendants to conduct not searching satisfies the FOIA requirement of conducting a search that is reasonably calculated to uncover responsive documents." *Moore*, 662 F. Supp. 2d at 139.

Regarding the National Missing and Unidentified Persons System or NamUs, the FBI asserts that it was not required to search that entity's files because NamUs "is not

8

an FBI database." Reply at 3. The Court agrees. *See* https://www.namus.gov (describing NamUs as a national clearinghouse funded and administered by the National Institute of Justice (NIJ)); https://www.nij.ojp.gov (describing NIJ as DOJ's "research, development and evaluation agency"). An agency's FOIA obligations are triggered by its receipt of a request that "is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). Under DOJ's "decentralized system for responding to FOIA requests," a requester "should write directly to the FOIA office of the component that maintains the records being sought," which may be identified through the Department's FOIA Reference Guide. 28 C.F.R. § 16.3(a). Alternatively, FOIA requests may be addressed "to the FOIA/PA Mail Referral Unit, Justice Management Division, Department of Justice," which "will forward the request to the component(s) that it determines to be most likely to maintain the records that are sought." *Id*. § 16.3(a)(2). Such procedures impose no duty on one DOJ component to search the files of another component for responsive records.

    The court finds that Defendants have fully complied with FOIA by conducting reasonably adequate searches. Because no responsive records were found, much less withheld, the court declines to address whether "[t]he DNA records Plaintiff seeks are alternatively protected from disclosure under FOIA Exemption 3." Defs.' Mem. at 9.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be GRANTED and Plaintiff's motion for summary judgment will be DENIED. A corresponding order will issue separately.

Date: October 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge